# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

KLALEH J. PARKER,

              Plaintiff,

    vs.

HILTON GRAND VACATIONS, LLC,

              Defendant.

Case No.: 2:24-cv-02263-GMN-NJK

**ORDER DENYING
MOTION TO COMPEL ARBITRATION**

Pending before the Court is the Motion to Compel Arbitration, (ECF No. 14), filed by Defendant Hilton Grand Vacations, LLC ("Hilton"). Plaintiff Klaleh Parker filed a Response, (ECF No. 21),[1] to which Defendant replied, (ECF No. 23).

For the reasons discussed below, the Court DENIES the Motion to Compel Arbitration.

## I.    <u>BACKGROUND</u>

This action arises out of Defendant Hilton's alleged discriminatory treatment of Plaintiff while she was employed by Defendant. (*See generally* Compl., ECF No. 1). Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12111, *et seq.*, and Nevada's Anti-Discrimination statute, Nevada Revised Statute ("NRS") 613.310 *et seq.* (*See id.*). In early October 2018, as part of her onboarding with Defendant's predecessor-in-interest company (Diamond Resorts International), Plaintiff executed a series of onboarding documents. (Parker Decl. ¶ 2, Ex. 2 to Mot. Summ. J., ECF No. 21-2). Plaintiff states she was not provided an arbitration agreement as part of the onboarding process. (*Id.* ¶ 3). She also denies that she ever signed an arbitration agreement while employed by Defendant or its predecessor-in-interest company. (*Id.* ¶ 8).

---

[1] In her Response, Plaintiff moves the Court to order limited discovery. The Court does not consider her request because it was not brought by separate motion. *See* LR IC 2-2(b).

An arbitration agreement (the "Agreement") exists, however, that appears to bear Plaintiff's signature. (Mutual Binding Arbitration Agreement at 8, Ex. A to Mot. Compel, ECF No. 14-2). The Agreement states:

> By signing below or by continuing my employment with the Company on receiving notice of this agreement, I hereby acknowledge that I have carefully read the above arbitration agreement, understand it, and knowingly and voluntarily agree to its terms and give this specific authorization to submit to arbitration any dispute that has arisen or that may arise between the parties to this Agreement, unless I opt out within thirty (30) days utilizing the procedures set forth above in the section entitled "Right to Opt Out of the Agreement."

(*Id.*). Plaintiff believes that the signature appearing on the copy of the Agreement was taken from another document she had previously signed and electronically placed onto the Agreement without her knowledge or consent. (Parker Decl. ¶ 3, Ex. 2 to Mot. Summ. J., ECF No. 21-2). Defendant denies the forgery allegations and moves for an order compelling arbitration and awarding it attorney's fees. (*See generally* Mot. Compel, ECF No. 14).

## II.    **LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforcement of written arbitration agreements, including agreements arising from most employment contracts. *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111, 119 (2001). Section 2 of the FAA provides that:

> A written provision in. . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Courts place arbitration agreements "upon the same footing as

other contracts." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (alteration in original).  Thus, the Court's "role under the [FAA] is. . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013).  In answering these questions, the Court must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration. *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).  The party seeking to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by [a] preponderance of the evidence." *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (internal quotation marks and citation omitted).

In resolving a motion to compel arbitration, "[t]he summary judgment standard [of Federal Rule of Civil Procedure 56] is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quotations omitted).  Only when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).  If a district court decides that an arbitration agreement is valid and enforceable,

then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

### III. <u>DISCUSSION</u>

Defendant filed the Motion to Compel Arbitration arguing that the Agreement executed during Plaintiff's onboarding is a valid and enforceable instrument that requires Plaintiff to arbitrate all claims arising out of her employment with Defendant.  Plaintiff, however, "vehemently denies ever executing an arbitration agreement." (Resp. 2:2–3, ECF No. 21).

In evaluating the validity of the Agreement, the Court applies "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc., v. Kaplan*, 514 U.S. 938, 944 (1995).  In Nevada, an agreement constitutes an enforceable contract where there is "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).  Defendant bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. *Bridge Fund Capital Corp.*, 622 F.3d at 1005.

Here, Defendant submits a copy of the Agreement allegedly bearing Plaintiff's signature. (Mutual Binding Arbitration Agreement at 8, Ex. A to Mot. Compel). (*Id.*).  Kristi John, Senior Specialist, Human Resources Business Partner for Hilton, states that during Plaintiff's onboarding on October 3, 2018, Plaintiff was provided with a copy of the Agreement and executed it the same day. (John Decl. ¶ 7, Ex. C to Mot. Summ. J., ECF No. 14-4).  Handwriting expert and forensic document examiner, Jan Seaman Kelly, states that "[Plaintiff] is the writer of the disputed Klaleh Parker signature" on the Agreement. (Kelly Report at 3, Ex. F to Mot. Compel, ECF No. 14-8).

But Plaintiff alleges that her signature on the Agreement was forged by someone electronically copying and pasting Plaintiff's signature from one document to the Agreement, not by someone else physically signing Plaintiff's name. (Resp. 6:4–12).  To this point,

Plaintiff states in her signed Declaration that "at no point in [her] employment with [Defendant] or its predecessor in interest. . ., was [she] ever presented with a preprinted arbitration agreement for execution as part of the onboarding process or otherwise." (Parker Decl. ¶ 3, Ex. 2 to Mot. Summ. J.).  Plaintiff is "confident in [her] assertion" because of a past employment experience that caused her to become "extremely cautious and intentional about not signing any agreement or other documents that could be used to waive or compromise [her] legal rights, particularly as it pertains to [her] ability to access the courts for legal redress." (*Id.* ¶ 4). Plaintiff believes the signature found on the Agreement was taken from another document she had previously signed and placed onto the Agreement without her knowledge or consent. (*Id.* ¶ 10).  Plaintiff states that she "personally observed on numerous occasions, wherein signatures from one document would be repurposed or inserted onto other documents-often without the employee's direct involvement or awareness." (*Id.*).  Plaintiff ultimately believes this practice is how her signature came to be on the Agreement. (*Id.*).

Defendant argues the Court should not "give any weight to Plaintiff's self-serving, uncorroborated statements in her Declaration that she allegedly did not sign the Agreement and that her signature was forged." (Reply 8:21–22, ECF No. 23 (*F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997)).  It is true that "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Publishing Clearing House, Inc.*, 104 F.3d at 1171.  But Plaintiff's Declaration is not lacking in detailed facts nor supporting evidence.  Plaintiff does not merely state that she did not sign the Agreement and that it was forged; she states why she was cautious of such agreements in the first place, why she would not sign a document like the agreement, and, based on her own observations, how it is she believed her signature came to be on the Agreement that she was never presented.

Defendant also argues that the Court "should summarily reject Plaintiff's wholly unsupported, self-serving allegation that Defendant or Diamond had a 'common business practice' of forging documents." (Mot. Compel at 15, n.12).  To support its position, Defendant points the Court to an unpublished order from the Central District of California, *Spaeny v. TJX Companies, Inc.*, No. CV-21-6649-DMG-MARX, 2022 WL 334186 (C.D. Cal. Feb. 3, 2022).  In *Spaeny*, the plaintiff alleged that she did not personally sign the arbitration agreement and that someone else forged her hand-written signature. *Spaeny*, 2022 WL 334186, at *1–*2.  She also alleged that she personally witnessed defendant's employees forge employees' signatures on documents. *Id*.  The court did not credit the plaintiff's assertion that she never signed the arbitration agreement or her suggestion that her signature was forged for two reasons.  First, because the plaintiff did "not attest that she witnessed her records being forged, nor [did] she explain in any detail who specifically committed forgery, when, how often, or how she would have witnessed such conduct." *Id.* at *2.  Nor did she "describe any specific examples of forgery or offer the testimony of any corroborating witness." *Id.*  Second, the defendants countered the plaintiff's forgery allegations by offering testimony of a handwriting expert who opined that the signatures were a match. *Id.*

But the Court is not entirely persuaded by *Spaeny* because the facts here differ. Defendant fails to cite a binding case that establishes Plaintiff must attest that she witnessed her records being forged or explain who specifically committed forgery, when, how often, or how she would have witnessed such conduct, and/or offer the testimony of a corroborating witness to meet her burden of raising a genuine dispute of material fact here.  Moreover, Plaintiff does not allege that someone else wrote her signature, she alleges that someone copied and pasted her signature from one document into the Agreement.  Defendant attempts to rebut this by providing the Agreement's metadata and a declaration by Vignesh Battu, Senior Oracle Manager for Defendant, explaining the metadata.  Battu states "the metadata for the electronic

record of Plaintiff's executed [Agreement] indicates that the electronic record was first created on March 23, 2019 by Human Resources Analyst Tissa Pierce ("Ms. Pierce").  The metadata for the electronic record also indicates that the date of the [Agreement] is October 3, 2018." (Battu Decl. ¶ 4, Ex. B to Reply, ECF No. 23-3).  Battu also states that the "metadata for the electronic record of Plaintiff's executed [Agreement] also indicates that the executed [Agreement] was uploaded by Human Resources Analyst Elena Solis ("Ms. Solis") on April 6, 2020." (*Id.* ¶ 6).  Lastly, Battu provides that "[i]f any *subsequent* alterations to the above-referenced electronic record for Plaintiff's executed [Agreement] occurred, or if a new electronic record was created, the metadata on the Oracle system would so indicate." (*Id.*) (emphasis added).  Missing from Defendant's Reply, however, is information pertaining to what happened to the Agreement between October 3, 2018, when it was allegedly executed and March 23, 2019, when the electronic record was created for the Agreement.  Battu attests that the Oracle system would indicate any subsequent alterations to the Agreement, but she makes no guarantees regarding the lack or existence of alterations made prior to the Agreement's electronic record being created.  Therefore, this evidence does not rebut Plaintiff's theory of forgery.  Accordingly, the evidence Plaintiff presents about forgery, through her Declaration, is sufficient to demonstrate that there is a genuine dispute of material fact with respect to whether Plaintiff signed the Agreement.

Defendant lastly argues that even if Plaintiff did not sign the Agreement, she is still bound to its provisions because she did not "opt out" of the Agreement per its terms.  But this argument also fails because Plaintiff states she never received the agreement. (Parker Decl. ¶ 3, Ex. 2 to Mot. Summ. J.).  "[A] party cannot be required to submit [to arbitration] any dispute which he has not agreed so to submit," so if Plaintiff was never actually presented with the Agreement, she could not have consented to it by either signing it or failing to opt out of it. *See Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007).  Thus, there is also a

genuine dispute of material fact as to whether Plaintiff was presented with an Agreement in the first place.

In sum, because there is a genuine dispute of material fact with respect to whether a valid agreement to arbitrate exists, the Court cannot compel arbitration. *See* Hansen, 1 F.4th at 670.  Thus, the Motion to Compel Arbitration, including the request for attorney's fees, is DENIED without prejudice.[2]

## IV.    <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration, (ECF No. 14), is **DENIED** without prejudice.

**DATED** this ___27___ day of March, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court

---

[2] In Reply, Defendant attaches additional documents bearing Plaintiff's signature that reference the Agreement and contain their own arbitration provision. (*See* 2019 California Salesperson Agreement, Ex. A-2 to Mot. Compel, ECF No. 23-2); (*see also* 2020 California Salesperson Agreement, Ex. A-3 to Mot. Compel, ECF No. 23-2).  Defendant also presents arguments asserting that Plaintiff ratified the Agreement when she was made aware of the Agreement after she asked to review her employment file in May 2022. (Reply 11:15–17). Defendant argues that these documents, in and of themselves, and Plaintiff's alleged ratification demonstrate that Plaintiff must submit to arbitration.  But because these additional arbitration agreements and arguments were brought up for the first time in Reply, and Plaintiff did not have an opportunity to respond to them, the Court will not make a determination on the validity of these arbitration provisions and the ratification argument in this Order.  However, in light of these documents and arguments, the Court denies Defendant's Motion to Compel Arbitration without prejudice.